Ex. A

 **IN THE 9TH JUDICIAL CIRCUIT COURT, LINN COUNTY, MISSOURI**

| Judge or Division: TERRY ALAN TSCHANNEN | Case Number: 17LI-CC00020 |
|---|---|
| Plaintiff/Petitioner: SANDRA GANN | Plaintiff's/Petitioner's Attorney/Address: MATTHEW LEE DAMERON 460 NICHOLS ROAD SUITE 200 KANSAS CITY, MO 64112 |
| vs. | |
| Defendant/Respondent: TRISTAR PRODCUTS, INC. | Court Address: PO BOX 84 108 N HIGH LINNEUS, MO 64653 |
| Nature of Suit: CC Other Miscellaneous Actions | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

**The State of Missouri to:  TRISTAR PRODCUTS, INC.**
                            Alias:

492 U.S. 46
FAIRFIELD, NJ 07004

*COURT SEAL OF*

*LINN COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

<u>5/24/2017</u>                                     <u>/s/ Mary S. Enyeart</u>
Date                                                Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
*(Seal)*            ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                    ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

**Service Fees, if applicable**

| Summons | $ _____ |
|---|---|
| Non Est | $ _____ |
| Mileage | $ _____  ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

 **IN THE 9TH JUDICIAL CIRCUIT COURT, LINN COUNTY, MISSOURI**

| Judge or Division:<br>TERRY ALAN TSCHANNEN | Case Number:  17LI-CC00020 |
|---|---|
| Plaintiff/Petitioner:<br>SANDRA GANN<br><br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>MATTHEW LEE DAMERON<br>460 NICHOLS ROAD<br>SUITE 200<br>KANSAS CITY, MO  64112 |
| Defendant/Respondent:<br>TRISTAR PRODCUTS, INC. | Court Address:<br>PO BOX 84<br>108 N HIGH<br>LINNEUS, MO  64653 |
| Nature of Suit:<br>CC Other Miscellaneous Actions | |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **TRISTAR PRODCUTS, INC.**
<br>    Alias:

492 U.S. 46
FAIRFIELD, NJ  07004

*COURT SEAL OF*

*LINN COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

<u>5/24/2017</u>                         */s/ Mary S. Enyeart*
<div style="margin-left:4em">Date</div>                                    Clerk

Further Information:

---

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    - [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    - [ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    - [ ] other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

<div align="center">_____        _____</div>
<div align="center">Printed Name of Sheriff or Server        Signature of Sheriff or Server</div>

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
<br>I am:  (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [ ] authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

<div align="center">_____</div>
<div align="center">Signature and Title</div>

---

Service Fees, if applicable
| | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Mileage | $ _____ | ( _____ miles @ $ _____ per mile) |
| **Total** | $ _____ | |

<div align="center"><b>See the following page for directions to clerk and to officer making return on service of summons.</b></div>

IN THE CIRCUIT COURT OF LINN COUNTY, MISSOURI
NINTH JUDICIAL CIRCUIT

SANDRA GANN                          )
on behalf of herself and             )
all others similarly situated,       )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     Case No. _____
                                     )
TRISTAR PRODUCTS, INC.,              )
                                     )
          Defendant.                 )
                                     )
SERVE DEFENDANT AT:                  )     **CLASS ACTION PETITION**
     492 U.S. 46                      )
     Fairfield, New Jersey 07004      )     **JURY TRIAL DEMANDED**

## CLASS ACTION PETITION

This case concerns defective pressure cookers that are manufactured and distributed by Tristar Products. For several years, Tristar has known about the defective and dangerous qualities of its Power Cooker and related products, but the company conceals those qualities from consumers and omits those qualities from its marketing materials.

Plaintiff files this Class Action Petition individually and on behalf of all similarly situated consumers in Missouri who purchased Power Pressure Cookers. In support of her Petition, Plaintiff respectfully submits the following:

## PARTIES

1.    Plaintiff Sandra Gann is a resident of Linn County, Missouri who purchased a Power Pressure Cooker that was manufactured and sold by Defendant.

2.    Defendant is a corporation with its corporate headquarters located at 492 U.S. 46; Fairfield, New Jersey 07004.

1

<u>JURISDICTION AND VENUE</u>

3.     This Court has general jurisdiction under Mo. Const. Art. V, § 14.

4.     The Court may exercise jurisdiction over Defendant because it has sufficient minimum contacts with Missouri, and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing and distribution of its products.

5.     A substantial portion of the events complained of herein occurred in Linn County, Missouri; therefore, venue is proper in Linn County, Missouri.

6.     Plaintiff and each member of the proposed Class have individually incurred damages in an amount less than $75,000. Neither Plaintiff nor any member of the proposed Class seeks individual damages exceeding $75,000 nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Plaintiff and each member of the proposed Class do not seek any form of "common" recovery, but rather individual recoveries not to exceed $75,000 for any member of the Class.

## FACTUAL ALLEGATIONS

7.     Tristar manufactures and distributes a wide range of products throughout the United States. Its products include the Ab Roller, Flex-Able Hose, and the Fusion Juicer.

8.     Tristar also manufactures and distributes pressure cookers that go by two different names: the Power Cooker and Power Pressure Cooker XL (collectively the "Power Cooker Products").

9.     Tristar has been on notice for several years that its Power Cooker Products are prone to explosions and can cause severe injuries. Despite this notice, the company has continued to market and sell the Power Cooker Products without enhanced disclosures or warnings.

10.     Tristar's concealment of these facts, and the corresponding omissions in its packaging, have harmed consumers.

### Tristar's Power Cooker Products

11.     The Power Cooker and Power Pressure Cooker XL are electric kitchen appliances used for food preparation. This cooking method is supposed to cook meals "up to 70% faster than conventional cooking" and "retains moisture, nutrients, and vitamins."

12.     Both the Power Cooker and Power Pressure Cooker XL consist of the same basic model structure: (1) a base that contains a control panel and the electrical power plug; (2) an inner pot which holds the ingredients and water; and (3) a magnetic lid to hold in the pressure.

13.     The Power Cooker and Power Pressure Cooker XL lids have virtually the same design with comparable parts. They contain a valve to release pressure after the food is finished cooking; the valve is engaged either with a release button or manually. The lids also have symbols indicating whether the unit is open or closed. And the lids are equipped with a rubber gasket that is responsible for sealing the lid to the unit.

14.     The lid's components are safety features designed to ensure that: (1) the lid does not come off the cooker while the unit is pressurized, and (2) the cooker's pressure is released in a safe and orderly manner.

15.     In addition to their design similarities, both the Power Cooker and the Power Pressure Cooker XL operate in the same manner. The inner pot is placed inside the control base, where water and ingredients are inserted into the inner pot. The lid, with rubber gasket underneath, is placed on top of the base.

16. The Power Cooker Products require the lid to be placed on them with the handle and recessed valve pointed at the 1:00 o'clock position and rotated counter-clockwise until it clicks. After a user selects a cook time, the Power Cooker Products begin cooking.

17. When the Power Cooker Products are finished cooking, the user is advised to engage the release valve on the lid—this is supposed to allow the pressure to be released quickly and completely. After the pressure is released from the internal pot, the lid unlocks, and the user may open it.

18. Both the Power Cooker and Power Pressure Cooker XL are sold in six quart, eight quart, and ten quart sizes.

19. The Power Cooker and the Power Pressure Cooker XL are advertised as having been manufactured to "the highest standards" and as having "Built-in Safety Features."

20. Some of these "Built-In Safety Features" include: (1) a lid safety lock; (2) a pressure/temperature sensor control; (3) a back-up safety release valve; (4) a clog-resistant feature; and (5) a spring-loaded safety pressure release. These are multi-layered safety features designed to ensure that a user is able to safely release the pressurized steam from the cooker.

21. In addition to these similar safety features, the Power Cooker and Power Pressure Cooker XL also tout a "Rapid Release" feature that allows a user to "lower pressure quickly and completely."

**Tristar Knows About the Dangerous Condition of the Power Cooker Products**

22. Tristar touts the safety of its products because of the inherent dangers associated with pressurized cooking. For example, since 2005 several other brands of pressure cookers have been recalled due to their dangerous nature.

4

23.     The following pressure cookers manufactured by other companies were voluntarily recalled due to the dangerous nature of their lids opening prematurely, causing hot contents to spill and burn users:

    a.   2015: Breville Pressure Cooker, recalling approximately 35,600 units[1];
    b.   2007: Mantra Pressure Cooker, recalling approximately 38,250 units[2];
    c.   2006: Ultrex Pressure Cooker, recalling approximately 3,900 units[3]; and
    d.   2005: Wellbuilt Electronic Pressure Cooker, recalling approximately 1,450 units[4].

24.     The recalls demanded that consumers "stop using their products immediately unless otherwise instructed" due to their hazardous conditions.

25.     Like these companies, Tristar is aware of the dangerous nature of the Power Cooker Products, but it has refused to issue a recall or notify consumers of the dangers related to the Power Cooker Products.

26.     Indeed, Tristar has been on notice concerning the dangerous nature of its Power Cooker Products since at least early 2015.

27.     For example, during the past three years, multiple lawsuits have been filed against Tristar in Florida, Georgia, Ohio, California, Michigan, Texas, Tennessee, and Louisiana, for the dangerous nature of its Power Cooker Products. These lawsuits specifically relate to the products' tendency to improperly release pressurized steam, explode because of the pressurized steam, and harm consumers.

---

[1]   https://www.cpsc.gov/Recalls/2016/Breville-Recalls-Pressure-Cookers (accessed May 15, 2017).
[2]   https://www.cpsc.gov/Recalls/2008/Pressure-Cookers-Recalled-By-Manttra-Inc-Due-to-Burn-Hazard (accessed May 15, 2017).
[3]   https://www.cpsc.gov/Recalls/product/07-509 (accessed May 15, 2017).
[4]   https://www.cpsc.gov/Recalls/2005/CPSC-HSN-LP-Announce-Recall-of-Welbilt-Electronic-Pressure-Cookers (accessed May 15, 2017).

28.     While Tristar denies the dangerous nature of its Power Cooker Products, individuals have suffered painful second-degree and third-degree burns to their body, requiring emergency medical attention and costly treatment.

29.     In addition to the lawsuits filed against Tristar, complaints have been reported through the SaferProducts.gov website—the consumer complaint portal for the United States Consumer Product Safety Commission ("CPSC")—and sent to Tristar. These complaints reflect consumers' safety concerns about Tristar's Power Cooker Products.

30.     Below are examples of complaints lodged with CPSC reflecting consumers' safety concerns:

- We were using a Tristar Pressure Cooker last night when 10 minutes into the cook time we heard a loud pop and a steaming sound. We went into the kitchen to see that it had popped its seal and was unlocked with steam coming out. We quickly unplugged it and turned the pressure release button. We didn't open it until it was finished steaming and then open[ed] it. We didn't use it again. (Date of incident: 11/01/16, report date: 11/02/16).[5]

- I purchased a power pressure cooker that said it had a built in safety feature, I did as the instructions said as far as my 1st use. Cook some water for 15 mins. After that it was ready for use, I cooked some collard greens and after I released all the pressure, I turned the handle after a while and it exploded all over and my husband and I got burned. We had to go to the ER. I will never again in life recommend this product to anyone! It is not safe at all!!! (Date of incident: 05/12/13, report date: 10/29/15).[6]

- My "Power Pressure cooker" exploded with fire hot chicken soup in it, covering my entire kitchen, hitting m[e] in the head with a piece of chicken, and burning my arm. My 7 year old child and his friend had just came through the the [sic] kitchen not seconds before this happened. The [explosion] did damage to my walls and cabinets, and had anyone been standing closer to it, it could have killed or seriously injured my family and my son friend. (Date of incident: 02/08/15, report date: 03/11/15).[7]

---

[5]     Report Number: 20161102-CEDCF-2147411470.
[6]     Report Number: 20151025-FFC84-2147427248.
[7]     Report Number: 20150311-6AFD4-2147434637.

6

31.     Thus, Tristar has been on notice of a defect in the Power Cooker Products for over two years, and it is aware of the danger the products pose to consumers.

32.     Despite this notice, Tristar has concealed the dangerous nature of the Power Cooker Products, and it has omitted from its marketing any warning or notice about the product's dangerous nature.

33.     Additionally, Tristar—unlike other manufacturers in the pressure cooker industry—has refused to issue a recall to notify consumers about the defect in the Power Cooker Products.

34.     To the contrary, Tristar continues to tout the Power Cooker Products as having special safety safeguards, including a "safe lock lid" and a "steam release valve" that presumably is intended to protect users from the risk of explosion.

35.     The Power Cooker Products are aggressively marketed by Tristar as an easy and safe culinary product intended to cook food in a fraction of the normal time as traditional methods by trapping heat and pressure inside of a sealed cooking chamber.

36.     The Power Cooker Products were and are marketed in a way that would intentionally mislead a consumer into believing the pressure cookers were reasonably safe, well-tested, and had multiple safeguards that would function and prevent an explosion, including but not limited to: (1) a back-up safety release valve to automatically release pressure build-up beyond its maximum setting; (2) a spring-loaded safety pressure release to automatically separate the inner pot from the rubber gasket and enable steam and pressure to escape around the pot lid should all other safety features fail; (3) a temperature cut-off device to automatically cut-off the power supply should the pressure cooker units malfunction and cause the internal temperature to exceed the safety limit; and (4) a lid safety lock on the top of the cookers that supposedly

7

prevents the top from coming off or being removed unless and until pressure had dissipated and it was safe to remove.

37.     During ordinary and routine operation, the Power Cooker Products generate extreme heat and steam. According to the Owner's Manual accompanying the Power Cooker Products, which is received by every consumer who purchases one, the lid "should only come off if there was no pressure inside." When the defect manifests itself, however, the built-up pressure and steam trapped inside the Power Cooker Products cause scalding hot contents to burst and erupt from the appliances when the lid is opened by the consumer, resulting in significant and painful personal injury to the consumer.

38.     This defect includes, but is not limited to, a defective pressure release valve that fails to adequately release built-up pressure, causing scalding hot contents to burst and erupt from the Power Cooker Products when the lid is opened by the consumer ("Defect"). The Defect is also related to a faulty gasket that allows the lid to open despite the presence of significant built-up pressure, and despite a "built in safety feature" designed to prevent the lid from opening until all the pressure is released. As a result of the Defect, the Power Cooker Products explode without warning, causing severe burns.

39.     Because of the substantial similarities in the design between the Power Cooker and Power Pressure Cooker XL, the Defect exists in all Power Cooker Products.

### Plaintiff's Power Cooker Explodes

40.     Plaintiff and her husband purchased her Power Cooker at Walmart in Linn County, Missouri in approximately May 2015. Plaintiff's husband selected the Power Cooker as a gift for Plaintiff.

8

41.     Plaintiff's Power Cooker bears a Model No. PC-WAL1, and a Serial No. CA0470630.

42.     Plaintiff and her husband paid approximately $99.99 plus tax for the Power Cooker.

43.     Plaintiff's Power Cooker was purchased for personal and household use; Plaintiff did not use the Power Cooker for any commercial purpose.

44.     On or about February 4, 2017, Plaintiff's daughter used Plaintiff's Power Cooker in Plaintiff's kitchen to cook beef roasts.

45.     Plaintiff's daughter set the Power Cooker to cook for 35 minutes and after the time expired the Power Cooker turned off.

46.     After letting it sit for one hour, Plaintiff's daughter engaged the release button to raise the pressure release valve to allow the built-up pressure and steam to escape from the Power Cooker.

47.     Plaintiff's daughter then turned the Power Cooker lid to open and the Power Cooker exploded spraying scalding hot grease and steam onto her face and kitchen ceiling.

48.     As a result of the Power Cooker exploding, Plaintiff's daughter suffered severe burns on her face and body.

49.     Plaintiff's daughter's use of Plaintiff's Power Cooker was foreseeable and within the anticipated use for such a product.

50.     Plaintiff and her husband paid a premium for her Power Cooker compared to other pressure cookers available on the market.

9

51.   Had Plaintiff's husband known of the Power Cooker's propensity to explode when the lid is removed, he would not have selected the product or Plaintiff and her husband would not have paid the premium price for the Power Cooker.

52.   Because Plaintiff paid a premium price for a defective product that has zero value, she has suffered cognizable damage.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff re-alleges and incorporates by reference the allegations set forth above.

54.   Pursuant to Missouri Supreme Court Rule 52.08, Plaintiff brings this class action and seeks certification of the claims on behalf of the following class:

> Citizens of Missouri who purchased a Power Cooker or Power Pressure Cooker XL in the State of Missouri within the five-year period immediately preceding the filing date of this action.

55.   Excluded from the Class are consumers who suffered personal injuries due to the Defect in the Power Cooker Products.

56.   Also excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

57.   Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

58.   This action has been brought and may be maintained as a class action under Missouri Supreme Court Rule 52.08.

59.   **Numerosity – Mo. R. Civ. P. 52.08(a)(1).** Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their

identities are unknown to Plaintiff at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail or by published notice or other appropriate methods.

60. **Existence and Predominance of Common Questions of Law and Fact – Mo. R. Civ. P. 52.08(a)(2); 52.08(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 52.08(c)(4), include the following:

a. Whether Defendant's practices and representations related to the marketing, labeling, and sales of the Power Cooker Products were unfair, deceptive, and/or unlawful in any respect, thereby violating Missouri's Merchandising Practices Act;

b. Whether Defendant's conduct constituted unjust enrichment in violation of Missouri law;

c. Whether Defendant's conduct as set forth above injured consumers and, if so, the extent of the injury;

d. Whether this case may be maintained as a class action under Mo. R. Civ. P. 52.08;

e. Whether and to what extent Class members are entitled to damages and other monetary relief;

f. Whether and to what extent Class members are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or a permanent injunction; and

g.      Whether and to what extent Class members are entitled to attorneys' fees and costs.

61.      **Typicality – Mo. R. Civ. P. 52.08(a)(3).**  Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased the product at issue in the litigation. Plaintiff's claims are typical of the claims of the members of the Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

62.      **Adequacy of Representation – Mo. R. Civ. P. 52.08(a)(4).**  Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

63.      **Superiority – Mo. R. Civ. P. 52.08(b)(3).**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of

scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

64.     Additionally, the Class may be certified under Rule 52.08(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## COUNT I
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Rev. Stat. §§ 407.010 *et seq.*
### (Brought by Plaintiff on behalf of the Class)

65.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

66.     The Missouri Merchandising Practices Act ("the Act") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020.1.

13

67.    The enabling regulations for the Act define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

68.    Under the Act, the term "merchandise" is broadly defined to include "any objects . . . or services." Mo. Rev. Stat. § 407.020.4.

69.    The Act authorizes private causes of action, and class actions. Mo. Rev. Stat. §§ 407.025.1; 407.025.2.

70.    Plaintiff purchased Tristar's Power Cooker Products for personal use within the meaning of the Act.

71.    Tristar's practice of omitting and concealing material facts concerning the safety and explosion risk associated with its Power Cooker Products is an unfair practice within the meaning of the Act.

72.    As a result of Defendant violating the Act, Plaintiff and others sustained an ascertainable loss of money when they overpaid for Defendant's Power Cooker Products.

73.    Defendant's violations of the Act were willful and knowing.

74.    Plaintiff and Class members seek actual damages; a declaration that Defendant's methods, acts and practices violate the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*; an injunction prohibiting Defendant from continuing to engage in such unlawful methods, acts, and practices; restitution; rescission; disgorgement of all profits obtained from Defendant's unlawful conduct; pre and post-judgment interest; and attorneys' fees and costs.

14

<u>COUNT II</u>
UNJUST ENRICHMENT / MONEY HAD AND RECEIVED
(Brought by Plaintiff on behalf of the Class)

75.     Plaintiff re-alleges and incorporates by reference the allegations set forth above. Plaintiff asserts this cause of action on behalf of the Class against Defendant.

76.     As a direct and proximate result of Defendant's conduct regarding the marketing and sale of its Power Cooker Products, Plaintiff and members of the Class paid a price premium for the products.

77.     By virtue of paying the price premium, Plaintiff and the Class conferred upon Defendant a benefit to the detriment of Plaintiff and the Class.

78.     Defendant realized and appreciated the benefit it received from the unauthorized price premium that it charged to Plaintiff and the Class.

79.     Defendant has been unjustly enriched in violation of Missouri law in retaining the revenues derived from the price premium paid by Plaintiff and the Class.

80.     Defendant's retention of these unjust payments would be inequitable, and Defendant owes restitution to Plaintiff and the Class on account of its unjust enrichment.

81.     Plaintiff and the Class seek judgment in their favor and against Defendant in such amount as is fair and reasonable, for injunctive relief enjoining Defendant from continuing to overcharge Missouri consumers for Defendant's Power Cooker Products, an award of reasonable attorneys' fees, and costs and expenses.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED: May 23, 2017                                  Respectfully submitted,

                                                     WILLIAMS DIRKS DAMERON LLC

                                                     _____/s/ Matthew L. Dameron_____
                                                     Matthew L. Dameron (MO Bar No. 52093)
                                                     1100 Main Street, Suite 2600
                                                     Kansas City, Missouri 64105
                                                     Telephone:    (816) 945-7110
                                                     Facsimile:    (816) 945-7118
                                                     Email:        matt@williamsdirks.com

                                                             -and-

                                                     Tim J. Riemann (MO Bar No. 61757)
                                                     FUNK RIEMANN LLP
                                                     1600 Genessee, Suite 860
                                                     Kansas City, Missouri 64102
                                                     Telephone:    (816) 348-3003
                                                     Facsimile:    (816) 895-6351
                                                     Email:        tim@frlawkc.com

16